**BEACON NATIONAL INSURANCE COMPANY et al., Appellants,**

v.

**TEXAS STATE BOARD OF INSUR-ANCE et al., Appellees.**

**No. 13096.**

Court of Civil Appeals of Texas, Austin.

April 23, 1980.

Rehearing Denied May 14, 1980.

See also 582 S.W.2d 616.

Joe E. Shaddock, Wichita Falls, for appellants.

Mark White, Atty. Gen., Catherine B. Fryer, Asst. Atty. Gen., Austin, for Texas State Bd. of Ins.

Mary Joe Carroll, Clark, Thomas, Winters & Shapiro, Austin, for Texas Catastrophe Property Ins. Ass'n.

SMITH, Justice.

After exhausting their administrative remedies, appellants, Beacon National Insurance Company and First Preferred Insurance Company, filed suit in district court against appellees, Texas State Board of Insurance and Texas Catastrophe Property Insurance Association, seeking to enjoin appellees from placing new or additional extra-hazardous risk policies with appellants, an entry of an order setting more equitable bases for voluntary writings of extra-hazardous risk insurance, and, alternatively, a declaration that Tex.Ins.Code Ann. art. 21.-49 (Supp.1979) (the "Catastrophe Property Insurance Pool Act"), was unconstitutional. Before trial, the district court severed the constitutional cause of action from the administrative appeal. The administrative appeal proceeded to trial and was reviewed by this Court in *Beacon National Insurance Company v. Texas State Board of Insurance*, 582 S.W.2d 616 (Tex.Civ.App.—Austin 1979, no writ). After trial to the court on the issue of constitutionality, judgment was entered that Article 21.49 and the plan of operation of the Texas Catastrophe Property Insurance Association are constitutional and that all relief sought by appellants should be denied. Appellants have again perfected their appeal to this Court.

Appellants attack the constitutionality of Article 21.49 and the plan of operation of the Texas Catastrophe Property Insurance Association (known as the "Cat Pool") alleging that, by their operation, they abridge appellants' rights to due process and equal protection of law as guaranteed by the Constitutions of the United States and the State of Texas.

Appellants contend that Article 21.49 violates their right to equal protection of law by giving the larger insurance companies the competitive advantage of being able to write themselves out of Cat Pool participation and forcing the smaller companies, such as Beacon and First Preferred, to write the bulk of their policies in less desirable areas of the designated catastrophe zone. Many of the large companies have a very small percentage of participation in

the Cat Pool as compared to that of the smaller companies. Appellants argue that this is due largely to the fact that the large insurers can obtain credit against Pool participation based on their voluntary writings in the catastrophe area and that, because of their size, they are able to pick and choose their risks. Furthermore, appellants assert that the smaller insurance companies are not able to write insurance voluntarily in the catastrophe area because of both a limitation in the number of agencies available to them and the refusal of lenders to accept policies from them.

Appellants also contend that Article 21.49 violates their right to due process of law by forcing them to concentrate their coverage in certain limited areas so that, if a major catastrophe should hit one of those areas, appellants would possibly be subjected to such major losses as to amount to a taking of their property without compensation and which losses might impair their ability to meet their contractual obligations to their policyholders. Appellants point out that the Association has permitted concentration of more than 60% of the Pool in Galveston and Brazoria Counties. They predicate their suit on the issue of whether they would suffer unconstitutionally heavy financial losses should a major $800 million hurricane strike one of these counties where they have a concentration of windstorm coverage.

■■■ We have some question as to whether appellants have established a justiciable interest sufficient to maintain this suit for declaratory judgment. *California Products, Inc. v. Puretex Lemon Juice, Inc.*, 160 Tex. 586, 334 S.W.2d 780 (1960). A court will not declare rights on facts that are uncertain, contingent and which facts or events may never happen. *Laborers' International Union of North America, Construction & Municipal Workers Local Union No. 1253 v. Blackwell*, 482 S.W.2d 327 (Tex.Civ.App.—Amarillo 1972, no writ). Likewise, the mere fact that petitioners will sustain financial loss by reason of lawful competition is not sufficient to give them a justiciable interest. *Alabama Power Com-*

*pany v. Ickes*, 302 U.S. 464, 58 S.Ct. 300, 82 L.Ed. 374 (1937); *West Texas Utilities Co. v. Smith*, 168 S.W.2d 665 (Tex.Civ.App.— Austin 1943, writ ref'd).

However, assuming, *arguendo*, that appellants do have sufficient justiciable interest to allow them to maintain this suit, we feel that same must now be dismissed as moot.

Subsequent to entry of judgment upholding its constitutionality, Article 21.49 was amended by Acts 1979, 66th Leg., p. 1599, ch. 675, § 1, eff. Aug. 27, 1979:

"Sec. 19. In the event any occurrence or series of occurrences within the defined catastrophe area results in insured losses of the association totaling in excess of $100 million within a single calendar year, the proportion of the total loss allocable to each insurer shall be determined in the same manner as its participation in the association has been determined for the year under Subsection (c) of Section 5 of the Texas Catastrophe Insurance Pool Act, as amended, and any insurer which has paid its share of total losses exceeding $100 million in a calendar year shall be entitled to credit the amount of that excess share against its premium tax under Article 7064, Revised Civil Statutes of Texas, 1925, as amended. The tax credit authorized shall be allowed at a rate not to exceed 20 percent per year for five or more successive years following the year of payment of the claims. The balance of payments paid by the insurer and not claimed as such tax credit may be reflected in the books and records of the insurer as an admitted asset of the insurer for all purposes, including exhibition in annual statements pursuant to Article 6.12 of this Insurance Code."

■■■ Section 19 recognized the problem that a large catastrophe might visit on the smaller insurers and sought to deal with the problem by allowing losses in excess of $100 million to be credited against the insurer's premium tax. Clearly, this section was intended to alleviate the problem of which appellants complain in this suit.

In *Clymore Co. v. Railroad Commission of Texas*, 86 S.W.2d 797 (Tex.Civ.App.—Austin 1935, no writ), appeal was taken from an order of the trial court enjoining the Railroad Commission from producing gas from certain wells in Refugio County. The injunction was heard and determined under the authority of Article 6008. Subsequent to entry of the order that was basis of appeal, Article 6008 was amended by adding Chapter 120. The Court held:

"It is quite manifest that chapter 120 has . . . prescribed definitions, standards, and criteria which in many respects are essentially different from those prescribed or involved in the 1933 amendment. Whether these differences call for a different holding in the instant appeal depends both upon a proper construction of chapter 120 and factual issues applying such construction to the wells in question. We cannot in this proceeding, upon the record made in a hearing involving only the 1933 amendment, determine the issues; but are confined to the issues presented by the record as applied to the 1933 amendment. That amendment having been superseded by chapter 120, and the temporary injunction being predicated upon the violation of the 1933 amendment, the case, as presented in this appeal, has become moot."

*See also*: *Freeman v. Burrows*, 141 Tex. 318, 171 S.W.2d 863 (1943); *Danciger Oil & Refining Co. of Texas v. Railroad Commission of Texas*, 122 Tex. 243, 56 S.W.2d 1075 (1933); *Saunders v. Southwest General Insurance Company*, 304 S.W.2d 406 (Tex.Civ. App.—Austin 1957, writ ref'd n. r. e.).

The addition of Section 19 to Article 21.49 materially qualifies the liability that each insurer must bear under the Act. One of appellants' major contentions is that, in the event of an $800 million hurricane, they would possibly be forced into receivership because their share of the loss would be so great. Should such a storm happen, Section 19 would come into play and would have a direct affect on appellants' liability under the Act; any losses over $100 million would be credited against their premium tax over a period of years.

We do not hold that Article 21.49 is or is not constitutional; likewise, we do not hold that, if it were unconstitutional, the addition of Section 19 would make it constitutional. These questions depend on a construction of Article 21.49 as it now exists along with all attendant factual issues. As the record in this proceeding deals only with pre-amendment Article 21.49, that construction and those factual issues are not properly before us. *Clymore Co. v. Railroad Commission of Texas, supra.*

As this suit determined the constitutionality of a statute that has, in the interim, been materially amended by the Legislature, and that amended statute is not properly before us, any judgment rendered by this Court on the merits would violate the constitutional prohibition against advisory opinions and would not be determinative of any existing controversy. *Firemen's Insurance Company of Newark, New Jersey v. Burch*, 442 S.W.2d 331 (Tex.1968).

A case becomes moot when it appears that one seeks judgment upon some matter which, when rendered, cannot have any practical legal effect upon a then existing controversy. *McNeill v. Hubert*, 119 Tex. 18, 23 S.W.2d 331 (1930).

This appeal being now moot, the judgment of the district court is reversed, and the cause is hereby dismissed. *Freeman v. Burrows, supra.*